ACCEPTED
13-14-00516-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
4/30/2015 6:00:44 PM
DORIAN RAMIREZ
CLERK

No. 13-14-00516-CV

In the 13TH District
Court of Appeals of Texas

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
4/30/2015 6:00:44 PM
DORIAN E. RAMIREZ
CLERK

**PATRICK HLAVATY AND JEFF STRNADEL,
Appellants/Cross-Appellees,**

**vs.**

**COMMERCIAL STATE BANK OF EL CAMPO, TEXAS, INC.
Appellee/Cross-Appellant.**

On Appeal from the
329th District Court of Wharton County, Texas

**CROSS-APPELLEES PATRICK HLAVATY
AND JEFF STRNADEL'S BRIEF**

WALTER JAMES KRONZER, III, P.C.
Walter James Kronzer, III
State Bar No. 11735001
wkronzer@kronzer.com (e-mail)
3000 Weslayan, Suite 247
Houston, Texas 77027
713-622-5766
713-622-5445 (fax)

THE SINGLETON LAW FIRM
Howard H. Singleton
State Bar No. 1843620
singletonlaw@sbcglobal.net (e-mail)
109 East Milam
Wharton, TX 77488
979-532-9800
979-532-9085 (fax)

Attorneys for Cross-Appellees Patrick Hlavaty
and Jeff Strnadel

Oral Argument Requested

STATEMENT REGARDING ORAL ARGUMENT

As stated in their earlier brief in this appeal, Patrick Hlavaty and Jeff Strnadel request oral arguments to preserve their right to participate in any such arguments. But, as stated earlier, they suggest oral arguments are not necessary. This is simply an appeal involving a question of whether a trial court mistakenly believed it lacked jurisdiction over Patrick Hlavaty and Jeff Strnadel's claims. They believe this Court can reach a decision without oral arguments.

TABLE OF CONTENTS

page

Statement Regarding Oral Arguments. ............................................................. i

Table of Contents............................................................................................. ii

Index of Authorities. ....................................................................................... v

Statement of Facts. .......................................................................................... 1

Summary of Argument..................................................................................... 10

Standard of Review. ........................................................................................ 11

Argument and Authorities. .............................................................................. 12

I.    THE TRIAL COURT ERRONEOUSLY CONCLUDED IT HAD
      LOST JURISDICTION OVER THIS CASE SINCE NONE OF
      THE PRIOR NONSUIT ORDERS IN THIS CASE AMOUNTED
      TO A FINAL JUDGMENT....................................................................... 12

      A.    The Bank confuses an interlocutory process trapped
            by claims against other defendants with an
            interlocutory process where the only remaining trial
            court issue is a defendant's sanction claim............................... 13

      B.    The Bank ignores cases such as *Unifund CCR
            Partners v. Villa*, 299 S.W.3d 92 (Tex. 2009) (per
            curiam) and *Crites v. Collins*, 284 S.W.3d 839 (Tex.
            2009) (per curiam) in concluding that somehow the
            trial court had some very limited amount of time to
            consider a sanctions motion even though the trial
            court never signed a final judgment disposing of all
            parties prior to the Final Order on June 3, 2014....................... 16

            1.    The Agreed Order of Nonsuit for Defendants, The
                  Lending Center and Larry Durwood Tew signed on
                  November 15, 2013 was not a final, appealable
                  judgment in this matter.. ................................................ 17

2. In *Unifund CCR Partners v. Villa*, 299 S.W.3d 92 (Tex. 2009) (per curiam) the Texas Supreme Court held a trial court still had plenary jurisdiction over a sanctions claim some nine months after a dismissal order made it the only claim pending before the trial court.............................................................................. 18

3. *Crites v. Collins*, 284 S.W.3d 839 (Tex. 2009) (per curiam) also supports the conclusion the trial court still had jurisdiction in June 2014 when it signed the Order of Sanctions.............................................. 19

4. The trial court still had jurisdiction in June 2014 as the trial court did not sign the last order of nonsuit until late 2013, and Hlavaty and Strnadel had asserted claims which prevented that nonsuit order from being a final, appealable judgment......................... 21

C. None of the nonsuit orders in this case expressly addressed Hlavaty and Strnadel's claims in their First Amended Counterclaims against the Bank.. .................... 22

II. ASSUMING THE TRIAL COURT HAD JURISDICTION TO ISSUE ITS JUNE 11, 2014 ORDER OF SANCTIONS, THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN INVOKING ITS INHERENT POWER TO SANCTION THE BANK'S BAD FAITH CONDUCT.. ....................................................... 26

A. The Bank waived any complaints about the four prior orders against the Bank.................................................... 26

B. The trial court did not abuse it discretion in signing the June 11, 2014 Order of Sanctions as the trial court complied with necessary due process requirements.............................................................. 28

iii

1. The basis of the trial court's Order of Sanctions is its inherent power to sanction bad faith conduct, but the Bank focuses on Texas Rule of Civil Procedure 13 instead of the stated trial court's inherent power.............................................. 29

2. The final Order of Sanctions was the fifth order against the Bank following four prior, valid, enforceable despite the Bank arguing to the contrary.......................................... 31

3. The trial court's June 11, 2014 Order of Sanctions complied with necessary due process requirements........................................ 33

C. Any error regarding the evidence supporting the monetary award or lack of particularity in the sanctions order is harmless because the trial court did not obscure its reasoning at the hearing, and the situation is adequately presented to this Court........................ 35

Prayer......................................................................... 39

Certificate of Compliance.......................................... 40

Certificate of Service. ............................................... 40

Appendix                                                          Tab

April 11, 2011 Order as to Jeff Stranadel's [sic] Motion to Compel Error & Omissions Policy. (CR Supp ___)..................................... A

September 8, 2011 Order granting Counter-Plaintiff Jeff Strnadel and Patrick Hlavaty's Motion to Compel (CR Supp ___).............................. B

Order Nunc Pro Tunc on Counterplaintiffs Motion to Compel & For Sanctions & Supplement to Counterplaintiffs Motion to Compel & for Sanctions (CR 3:541)........................................... C

INDEX OF AUTHORITIES

**Cases**                                                             **Page**

*American Heritage Cap., LP v. Gonzalez,*
436 S.W.2d 865 (Tex. App.–Dallas 2014, no pet.). ................. 14, 17, 21

*Barr v. Resolution Trust Corp.,*
837 S.W.2d 627 (Tex.1992). ........................................................... 24

*Crites v. Collins,*
284 S.W.3d 839 (Tex. 2009) (per curiam). ........................... 10, 14, 19

*Cuellar v. Maldonado,*
No. 13-14-00491-CV, 2015 Tex. App. LEXIS 2138 (Tex.
App.–Corpus Christi - Edninburg Mar. 5, 2015, n.w.h.)
(memorandum op.). ..................................................................... 11, 31-32

*CTL/Thompson Tex., LLC v. Starwood Homeowner's Assoc., Inc.,*
390 S.W.3d 299 (Tex. 2013) (per curiam). .................................... 10, 14

*In re A.M.B.V.,*
No. 13-13-00081-CV, 2015 Tex. App. LEXIS 59 (Tex.
App.–Corpus Christi - Edninburg Jan. 8, 2015, orig.
proceeding) (memorandum op.). .................................................. 10, 30

*In re Barnett & Garcia, PLLC,*
No. 09-15-00019-CV, 2015 Tex. App. LEXIS 542 (Tex.
App.–Beaumont Jan. 22, 2015, orig. proceeding)
(memorandum op.). ......................................................................... 19-20

*In re Bexar Co. Crim. Dist. Atty.'s Office,*
No. 04-14-00804-CV, 2014 Tex. App. LEXIS 13872 (Tex.
App.–San Antonio Dec. 31, 2014, orig. proceeding). ......................... 14

*In re Brookshire Grocery Co.,*
250 S.W.3d 66 (Tex. 2008) (orig. proceeding). ........................... 20-21

*In re J.M.B.,*
No. 13-14-00365-CV, 2014 Tex. App. LEXIS 8579 (Tex. App.–
Corpus Christi-Edinburg, Aug. 7, 2014, no pet.). ............................... 15

*In re Reynolds*,
No. 14-14-00329-CV, 2014 Tex. App. LEXIS 7105 (Tex. App.–Houston [14th Dist.] July 1, 2014, orig. proceeding) (memorandum op.). ................................................................ 14, 17, 21

*In re Walker & Twenhafel, LLP*,
No. 13-14-00065-CV, 2014 Tex. App. LEXIS 1729 (Tex. App.– Corpus Christi-Edinburg, Feb., 14, 2014, orig. proceeding) (memorandum op.). ................................................................ 22

*John Kleas Co. Inc. v. Prokop*,
No. 13-13-00401-CV, 2015 Tex. App. LEXIS 3162 (Tex. App.–Corpus Christi-Edinburg, Apr. 2, 2015, n.p.h.). ............ 11, 27, 35

*Kutch v. Del Mar College*,
831 S.W.2d 506 (Tex. App.–Corpus Christi 1992, no writ)...................................................................... 10-11, 30-32

*Powers v. Palacios*,
771 S.W.2d 716 (Tex. App.--Corpus Christi 1989, writ denied)...................................................................... 35, 37-38

*Rudisell v. Paquette*,
89 S.W.3d 233 (Tex. App.--Corpus Christi 2002, no pet.). .............. 27

*Spohn Hosp. v. Mayer*,
104 S.W.3d 878 (Tex. 2003). ...................................................... 33-34

*State & County Mutual Fire Ins. Co. v. Miller*,
52 S.W.3d 693 (Tex.1992)........................................................... 24

*Travelers Ins. Co. v. Joachim*,
315 S.W.3d 860 (Tex. 2010)..................................................................

*Unifund CCR Partners v. Villa*,
299 S.W.3d 92 (Tex. 2009) (per curiam). .......................... 10, 14, 17-18

*Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon*
*ex rel. Shultz,*
    195 S.W.3d 98 (Tex. 2006) (per curiam)............................................. 14

*Villafani v. Trejo,*
    251 S.W.3d 466 (Tex. 2008)................................................................. 14

## Rules

TEX. R. APP. P. 38.1(i). ............................................................................ 28, 30

TEX. R. APP. P. 44.1(a). ........................................................................... 35, 38

TEX. R. CIV. P. 41. .......................................................................................... 25

Cross-Appellees offer their own Statement of Facts as allowed by Texas Rule of Appellate Procedure 38.2(a)(1)(B) as Cross-Appellees are dissatisfied with Cross-Appellant's statement.  Cross-Appellant's Statement of Facts is inadequate as it does not convey all pertinent procedural facts in this case. The omitted procedural facts are a necessary to properly help the Court determine this appeal. Cross-Appellees present these omitted procedural facts here as part of their Statement of Facts.

*The beginnings*

On October 23, 2009, Plaintiff Commercial State Bank of El Campo, Texas ("the Bank") filed suit against multiple defendants, including Patrick Hlavaty, Jeff Strnadel, and seven other defendants. CR 1:23. The claims varied against the various defendants. CR 1:32-49. For example, as to Defendant Hlavaty, the Bank alleged causes of actions for theft, fraud, conversion, negligent failure to disclose, breach of fiduciary duties, constructive trust, conspiracy to defraud, and unjust enrichment. CR 1:32-39. As to Defendant Strnadel, the Bank alleged causes of action for breach of fiduciary duty and negligence. CR 1:39-40.

On March 29, 2010, Hlavaty and Strnadel file their respective counterclaims, both asserting counterclaims under Texas Civil Practice & Remedies Code section 37.009, as well as counterclaims for an award of

1

sanctions under Texas Rule of Civil Practice Rule 13. CR 1:61, 64. Hlavaty's pleadings stated, "Counterplaintiff would further show that Counterdefendant's pleadings herein are groundless and were brought in bad faith. Counterplaintiff is accordingly entitled to an award of sanctions under Tex.R.Civ.P. Rule 13—which at a minimum should include reimbursement to Counterplaintiff of his attorneys' fees." CR 1:61. Strnadel's pleading stated, in part, "Counterplaintiff would further show that Counterdefendant's pleadings herein are groundless and were brought in bad faith. . . . Counterplaintiff is accordingly entitled to an award of sanctions under TEx.R.Civ.P. Rule 13—which at a minimum should include reimbursement to Counterplaintiff of his attorneys' fees." CR 1:64-65.

*The first order against the Bank*

Hlavaty filed his Motion for Sanctions against the Bank on March 17, 2010. CR 1:56. Hlavaty requested the trial court order the Bank to produce certain documents. CR 1:57-58. The trial court signed an order granting discovery sanctions against the Bank on March 29, 2010. CR 1:60. The order required the bank to produce the documents by April 12, 2010. CR 1:60.

*The first nonsuit order*

On June 25, 2010, the Bank filed its Notice of Nonsuit against only defendants Hlavaty and Strnadel. CR 1:96.[1] "Plaintiff has decided to non-suit all claims regarding the above matter against Patrick Hlavaty and Jeffrey Strnadel, and hereby moves the Court to NON-SUIT all claims as to the aforesaid specific Defendants Strnadel and Hlavaty named herein without prejudice. All costs in this matter have been paid." CR 1:96. The nonsuit does not address, mention, or seek to adjudicate Hlavaty and Strnadel's claims against the Bank. CR 1:96.

On June 28, 2010, the trial judge signs Order of Non-suit for Defendants Hlavaty and Strnadel Without Prejudice. CR 1:100.[2] The order states that the Bank's claims "against Patrick Hlavaty and Jeffrey Sttnadel is hereby NONSUITED without prejudice." CR 1:100 (emphasis in original). The order does not address, mention, or seek to adjudicate Hlavaty and Strnadel's claims against the Bank. CR 1:100.

*The second nonsuit order*

On July 20, 2010 the Bank files its Notice of Nonsuit against only defendants Mark Waldron, Marshall Waldron, Blake Waldron, Waldron

---

[1] The certificate of service shows a June 23, 2010 filing date despite the June 25, 2010 file stamp date. CR 1:10.

[2] While the order shows a June 24, 201 signing, the docket sheet shows a June 28, 2010 signing. CR 1:10.

Development, and Michael Paul. CR 1:102. The nonsuit did not address, mention, or seek to adjudicate Hlavaty and Strnadel's claims against the Bank. CR 1:102-03. On July 28, 2010, the trial judge signed the Order of Non-suit for these defendants. CR 1:124. The order did not address, mention, or seek to adjudicate Hlavaty and Strnadel's claims against the Bank. CR 1:124.

### *The last nonsuit is filed*

On September 1, 2010, the Bank had filed its Notice of Nonsuit against the last remaining defendants The Lending Center and Larry Durwood Tew. CR 1:126. The nonsuit did not address, mention, or seek to adjudicate Hlavaty and Strnadel's claims against the Bank. CR 1:126. The trial court did not sign an order of nonsuit for these defendants until November 15, 2013. CR 3:559.

### *Plaintiff's motion for summary judgment and Hlavaty and Strnadel's response*

On March 15, 2011, the Bank filed its Motion for Summary Judgment regarding the Alleged Declaratory Judgment Counterclaims. CR 1:172. This motion was directed at Hlavaty and Strnadel's declaratory judgment action claim. CR 1:172-73. Hlavaty and Strnadel's Rule 13 claims were not at issue, "This Motion is not directed at the Counterclaims which assert a violation of TRCP 13 (which are essentially Motions for Sanctions). This Motion

seeks Summary Judgment on the Declaratory Judgment counterclaims only." CR 1:174-75.

In March 2015 Hlavaty and Strnadel amended their pleadings. CR: 249, 255. Strnadel first filed his First Amended Counterclaim of Defendant/Counterplaintiff Jeff Strnadel on March 15, 2011. CR 2:249. He asserted claims against the Bank, in addition to the earlier asserted declaratory judgment and sanctions claims, claims for breach of employment contract, quantum meruit, restitution, or unjust enrichment. CR 2:249-50.

On March 29, 2011, Hlavaty followed suit and filed his First Amended Counterclaim of Defendant/Counterplaintiff Patrick Hlavaty. CR 2:255. Like Strnadel, he asserted claims against the Bank, in addition to the earlier asserted declaratory judgment and sanctions claims, claims for breach of employment contract, quantum meruit, restitution, or unjust enrichment. CR 2:255-57. Hlavaty and Strnadel also filed their Counterplaintiffs' Summary Judgment Response on March 29, 2011. CR 2:261. The docket sheet shows a notation, "10/25/11 Bank's MSJ denied." CR 1:8.

*The second order against the Bank*

Strnadel filed his Jeff Stranadel's [sic] Motion to Compel Error & Omissions Policy on March 31, 2011. CR Supp ___.[3] On April 11, 2011 the trial court signed an order as to this motion. CR Supp ___ (see Appndx, Exhibit A). The Docket Sheet reflects the order's signing that day. CR 1:14. The order required the Bank produce any effective error and omissions policy within two weeks. CR Supp ___.

*The third order against the Bank*

Hlavaty and Strnadel filed their Counter Plaintiffa [sic] Motion for Continuance and to Compel Completion of Discovery on August 23, 2011. CR Supp ___. On September 8, 2011 the trial court signed an order as to this motion. CR Supp ___ (see Appndx, Exhibit B). The Docket Sheet reflects the order's signing that day. CR 1:8. The order required the Bank produce (1) David Melanson for deposition, and (2) any investigative reports as to Strnadel within forty-five days. CR Supp ___.

*The fourth order against the Bank*

On March 8, 2013 Hlavaty and Strnadel filed their Motion to Compel and for Sanctions. CR 2:308. Their motion addressed problems with

---

[3] Hlavaty and Strnadel realized after the Bank filed its Appellant's Brief that two discovery motions and their accompanying signed orders not in the appellate record were necessary to address the Bank's issue. Hlavaty and Strnadel filed their request for a Supplemental Clerk's Record containing these motions and orders with the Wharton County District Clerk. The Supplemental Clerk's Record is forthcoming shortly.

request for Disclosure, the Bank's Request for Production, requests for production, the Bank's compliance with court orders, and depositions as to Don Zwememann and David Melanson. CR 2:309-21. The prayer in this motion stated:

> WHEREFORE, Movants/Counterplaintiffs Patrick Hiavaty and Jeff Strnadel move the Court for an order of sanctions against Counterdefendant Commercial State Bank of El Campo, Texas, Inc. Movants pray that whatever the Court orders will be sufficient to impress upon the Bank and its counsel the need to participate in discovery in good faith; and that the relief granted will recompense the Movants for at least some of the time and money which have been wasted pursuing what ought to have been routine discovery from the Bank.

CR 2:321. On July 22, 2013 the trial court signed an order granting the motion. CR 3:504. On August 21, 2013 the trial court signed its Order *Nunc Pro Tunc* on Counterplaintiffs' Motion to Compel and for Sanctions and Supplement to Counterplaintiffs Motion to Compel and for Sanctions. CR 3:541. In that order the trial court ordered the bank to produce various documents within forty-five days. CR 3:541-42. As to Hlavaty and Strnadel's request for sanctions, the order states, "The prayer of Counterplaintiffs for further Sanctions in the Motion and the Supplement is neither granted nor denied, but shall be carried with this case." CR 3:543.

*The last nonsuit order is signed*

The trial court finally signs an order of nonsuit for the defendants The Lending Center and Larry Durwood Tew until November 15, 2013. CR

3:559. The order simply limits its focus to the Bank and these remaining defendants, "It is accordingly ORDERED by this Court that the above cause of action brought by Commercial State Bank of El Campo, Texas, Inc. against The Lending Center, Inc. and Larry Durwood Tew is hereby NONSUITED without prejudice." CR 3:559. The order does not address, mention, or seek to adjudicate Hlavaty and Strnadel's claims against the Bank. CR 3:559.

*The trial court dismisses claims against the Bank*

On April 8, 2014, the Bank files its Commercial State Bank of El Campo, Texas's [*sic*] Motion to Dismiss and Vacate Orders. CR 3:561. On June 3, 2014, the trial court signed a Final Order in this matter. CR 4:784. On June 11, 2014, it signed an Order of Sanctions whereby it granted Hlavaty and Strnadel monetary sanctions against the Bank. CR 4:788.

*The fifth order against the Bank*

On August 19, 2014, the trial court signed an Agreed Order whereby the trial court, pursuant to Texas Rule of Civil Procedure 306a(4), determined that all parties did not receive notice of the June 2014 orders signing until late July 2014 - July 28 for Hlavaty and Strnadel, July 29 for The Bank. CR 4:812-13. The Bank filed a Motion to Vacate Order for Sanctions order on July 31, 2014. CR 4:791. This motion to vacate did not directly reference the four prior orders nor complain about any prior orders

8

against the Bank beyond implicitly arguing the trial court lack jurisdiction over certain matters. CR 4:791-93. Hlavaty and Strnadel filed a motion to set aside the June 3, 2014 Final Order on August 28, 2014. CR 4:814. Hlavaty and Strnadel filed their Notice of Appeal on September 11, 2014. CR 4:855.

SUMMARY OF ARGUMENT

The trial court just did not "get it" when it came to nonsuits, sanctions, and plenary jurisdiction. Its holdings in its June 3, 2014 Final Order reflect a knowledge of, but not an understanding of, cases such as *CTL/Thompson Tex., LLC v. Starwood Homeowner's Assoc., Inc.*, 390 S.W.3d 299 (Tex. 2013) (per curiam), *Unifund CCR Partners v. Villa*, 299 S.W.3d 92 (Tex. 2009) (per curiam), *and Crites v. Collins*, 284 S.W.3d 839 (Tex. 2009) (per curiam). Patrick Hlavaty and Jeff Strnadel had multiple pending claims, including a sanctions claim, as well as an employment breach of contract claim, when the trial court dismissed and struck Hlavaty and Strnadel's claims in the June 3, 2014 Final Order. Therefore, the basis of the trial court's June 3, 2014 Final Order is faulty and requires a remand the matter to the trial court for further proceedings.

As to the June 11, 2014 Order of Sanctions, Texas trial courts have the inherent power to sanction a party for abusing the judicial process through bad faith conduct. *Kutch v. Del Mar College*, 831 S.W.2d 506, 509 (Tex. App.--Corpus Christi 1992, no writ); *see In re A.M.B.V.*, No. 13-13-00081-CV, 2015 Tex. App. LEXIS 59 *33 (Tex. App.–Corpus Christi - Edninburg Jan. 8, 2015, orig. proceeding) (memorandum op.). The Court should affirm the Order of Sanctions as the order complied with necessary due process requirements.

10

STANDARD OF REVIEW

The Court reviews the imposition of sanctions using an abuse of discretion standard. *John Kleas Co. Inc. v. Prokop*, No. 13-13-00401-CV, 2015 Tex. App. LEXIS 3162 *45 (Tex. App.– Corpus Christi-Edinburg, Apr. 2, 2015, n.p.h.) (citing to *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007)). The Court will reverse the trial court's sanctions ruling "only if the trial court acted without reference to any guiding rules and principles, such that its ruling was arbitrary or unreasonable." *Id.* The Court examines whether there is a direct nexus between the improper conduct and the sanction imposed to determine if the sanctions were appropriate or just. *Id.* The scope of the Court's review is not limited to the sanctions hearing - it includes the entire record that was before the trial court. *Cuellar v. Maldonado*, No. 13-14-00491-CV, 2015 Tex. App. LEXIS 2138 *33 (Tex. App.–Corpus Christi - Edninburg Mar. 5, 2015, n.w.h.) (memorandum op.); *Kutch v. Del Mar College*, 831 S.W.2d 506, 508 (Tex. App.--Corpus Christi 1992, no writ).

I.     THE TRIAL COURT ERRONEOUSLY CONCLUDED IT HAD LOST JURISDICTION OVER THIS CASE SINCE NONE OF THE PRIOR NONSUIT ORDERS IN THIS CASE AMOUNTED TO A FINAL JUDGMENT.

Cross-Appellant Commercial State Bank of El Campo, Texas ("the Bank") argues that the trial court lacked jurisdiction to issue the June 11, 2014 Order of Sanctions. Cross-Appellant's Brief at pages 10-17. Thus the Bank contends the Court should reverse the trial court and strike the sanctions award against it. As the Bank states:

> However, on June 11, 2014, the same trial court that admitted it lost jurisdiction in December of 2013, entered an order of sanctions for conduct that allegedly occurred pre-judgment. The trial court was without a doubt lacking subject matter jurisdiction to enter such order and not only violated the rules of civil procedure, but also violated its own order. As a result, the trial court erred by taking action after its plenary jurisdiction expired.

Cross-Appellant's Brief at page 17. The Bank's argument advocates the theory that as long as a trial court says it is dark outside, it is dark outside . . . even if the sun is shining bright. However, saying so does not make it true, and the trial court had jurisdiction over this matter when it said it did not have such in its June 3, 2014 Final Order. It also had jurisdiction when it signed the June 11, 2014 Order of Sanctions.

This Court cannot allow itself to be confused as the trial court was. This is not an "A sues B, B seeks sanctions, A nonsuits B," and the question

concerns whether the trial court still had jurisdiction over B's claims long after the trial court grants the nonsuit. This is an "A sues B-G, B seeks sanctions, A nonsuits B, A does not nonsuit C-G for several years," and the question concerns whether the trial court still had jurisdiction over B's claims after the trial court grants the last nonsuit. Stated another way, none of the nonsuits in this case specifically disposed of Hlavaty and Strnadel's sanctions claim. As Hlavaty and Strnadel argue in their own Appellants' Brief, the trial court got it wrong, and abused its discretion in doing so. This Court should hold the trial court had jurisdiction over this matter on June 11, 2014 when it granted sanctions against the Bank.

A.    The Bank confuses an interlocutory process trapped by claims against other defendants with an interlocutory process where the only remaining trial court issue is a defendant's sanction claim.

In voicing the phrase "pursuing sanctions under Rule 13 with reasonable diligence and within a reasonable time after the non-suits were filed" the trial court echoed the Bank's arguments in Cross-Appellant's Commercial State Bank of El Campo, Texas's [*sic*] Motion to Dismiss and Vacate Orders. CR 3:571-72. In its brief the Bank again argues "pursuing sanctions within a reasonable amount of time after the nonsuit as to all defendants was filed." Cross-Appellant's Brief at page 14. The concept is that while a nonsuit order may extinguish the merits of the case between

the parties, "a dismissal 'shall have no effect on any motion for sanctions, attorney's fees or other costs, pending at the time of dismissal.'" *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam) (citing TEX. R. CIV. P. 162). The line of cases often cited to by appellate courts (and even in part by the Bank in its trial court filings) deal with a scenario often repeated - whether the plaintiff's nonsuit in a case started a trial court's post judgment plenary jurisdiction time clock or mooted a permissible accelerated appeal (i.e., it began an appellate timetable or resolved all issues, including orders on appeal). *CTL/Thompson Tex., LLC v. Starwood Homeowner's Assoc., Inc.*, 390 S.W.3d 299, 300 (Tex. 2013) (per curiam); *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 96-97 (Tex. 2009) (per curiam); *Crites v. Collins*, 284 S.W.3d 839 (Tex. 2009) (per curiam); *Villafani v. Trejo*, 251 S.W.3d 466, 468 (Tex. 2008); *Estate of Blackmon ex rel. Shultz*, 195 S.W.3d at 100-01; *In re Bexar Co. Crim. Dist. Atty.'s Office*, No. 04-14-00804-CV, 2014 Tex. App. LEXIS 13872 *6 (Tex. App.–San Antonio Dec. 31, 2014, orig. proceeding); *In re Reynolds*, No. 14-14-00329-CV, 2014 Tex. App. LEXIS 7105 *16-17 (Tex. App.–Houston [14th Dist.] July 1, 2014, orig. proceeding) (memorandum op.); *American Heritage Cap., LP v. Gonzalez*, 436 S.W.2d 865 (Tex. App.–Dallas 2014, no pet.).

However, the simple truth is that in this case events occurred that were interlocutory and unreviewable until years later, at best. The trial court signed the nonsuit order as to Hlavaty and Strnadel on June 28, 2010. CR 1:100.[4] Without addressing what claims actually survived that nonsuit at this time, the trial court states some three plus years later, "The notice of non-suit as to Hlavaty and Strnadel did not prevent them from pursuing sanctions from the trial court under Rule 13." CR 4:785. If in October 2010 the trial court had signed an order on the sanctions, such an order was not appealable at that time as it was merely an interlocutory order. Assuming the losing party attempted an appeal one can envision the Court stating in addressing that attempted appeal:

> As a general rule, appeals may be taken only from final judgments. . . . Appellate courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly provides such jurisdiction. . . . The Court, having examined and fully considered the documents on file, is of the opinion that we lack jurisdiction over this attempted appeal.

*In re J.M.B.*, No. 13-14-00365-CV, 2014 Tex. App. LEXIS 8579 *6, 10 (Tex. App.– Corpus Christi-Edinburg, Aug. 7, 2014, no pet.) (citations omitted) (dismissing an appeal of an interlocutory sanction order). The case

---

[4] While the order shows a June 24, 2011 signing, the docket sheet shows a June 28, 2010 signing. CR 1:10.

remained pending, and Hlavaty and Strnadel continued to pursue sanctions and other claims as the Bank pursued orders against them.[5]

The Bank did not merely bring suit against just Patrick Hlavaty and Jeff Strnadel in October 2009, they sued seven other defendants. CR 1:23. The Bank painstakingly analogizes the time elapsed in the case in comparison to other cases as if there were only three parties - Hlavaty, Strnadel, and it. Of course that is a deft sleight of hand that should not divert the Court's attention from what was the state of affairs in late 2013, not 2010. At that time Hlavaty and Strnadel asserted claims that were pending and valid.

    B.    The Bank ignores cases such as *Unifund CCR Partners v. Villa*, 299 S.W.3d 92 (Tex. 2009) (per curiam) and *Crites v. Collins*, 284 S.W.3d 839 (Tex. 2009) (per curiam) in concluding that somehow the trial court had some very limited amount of time to consider a sanctions motion even though the trial court never signed a final judgment disposing of all parties prior to the Final Order on June 3, 2014.

In this Court the Bank blatantly argues what it argued to the trial court - a thirty-day plenary jurisdiction deadline running from November 2013 can apply to this matter. Cross-Appellant's Brief at 16; CR 3:573. In arguing such the Bank would want a reviewing court to put blinders on to post-*Estate of Blackmun* cases such as *Unifund CCR Partners*, and *Crites*.

---

[5] The Bank filed a motion for summary judgment based on the pleadings in February 2011 (CR 1:172), and then complained when Hlavaty and Strnadel filed amended pleadings in response to the motion for summary judgment (CR 2:270).

But, they stand as logical impediments to the an argument that Hlavaty and Strnadel's claims were somehow long dead. That is why the trial court still had jurisdiction over this matter in June 2014.

      1.     The Agreed Order of Nonsuit for Defendants, The Lending Center and Larry Durwood Tew signed on November 15, 2013 was not a final, appealable judgment in this matter.

On November 15, 2013 the trial court signed Agreed Order of Nonsuit for Defendants, The Lending Center and Larry Durwood Tew. CR 3:559. The Texas Supreme Court has held "that an order of dismissal pursuant to nonsuit is not a final, appealable order when the order does not "unequivocally express an intent to dispose of all claims and all parties . . .." *Unifund CCR Partners*, 299 S.W.3d at 96."Unless the motion (for sanctions) was specifically referenced as having been disposed of by the dismissal order, the order did not necessarily dispose of (the sanctions) motion." *Id*. "And if a sanctions request is a 'claim' that survives a nonsuit, a judgment is not final and appealable until the sanctions request is specifically disposed of by the trial court, or until the trial court issues an order with sufficient finality language." *In re Reynolds*, No. 14-14-00329-CV, 2014 Tex. App. LEXIS 7105 \*13; *see also  American Heritage Cap., LP*, 436 S.W.2d at 871. Despite any Cross-Appellant arguments to the contrary, the trial court had never ruled on, one way or the other, Hlavaty and

Strnadel's pre-nonsuit sanctions claim. Consequently, the sanctions claim still existed after November 15, 2003. *Unifund CCR Partners*, 299 S.W.3d at 96.

    2.    In *Unifund CCR Partners v. Villa* the Texas Supreme Court held a trial court still had plenary jurisdiction over a sanctions claim some nine months after a dismissal order made it the only claim pending before the trial court.

In *Unifund CCR Partners*, the Texas Supreme Court considered whether a trial court still had plenary jurisdiction to consider a sanctions motion some nine months after a dismissal order made the sanctions claim the sole remaining issue before the trial court. As the Court noted, "[W]e address Unifund's claim that the sanctions order is void because the trial court's plenary power expired before it signed the order nine months after the order dismissing Unifund's suit." *Id.* at 95. The Court rejected the lack of jurisdiction argument finding, "We explained that the trial court had power to grant sanctions so long as its plenary authority had not expired and whether the trial court acted within its plenary power depended on whether the order of dismissal was a final judgment." *Id.* at 96.

A nine-month period after a dismissal order was still timely in *Unifund CCR Partners*. Here, the trial court signed a sanctions order and dismissed Hlavaty and Strnadel's sanctions claim less than seven months after the non-final nonsuit order. The trial court's Final Order of June 3,

2014 is contrary to *Unifund CCR Partners*. Consequently, the trial court still had jurisdiction when it signed the June 11, 2014 sanctions order.

      3.    *Crites v. Collins* also supports the conclusion the trial court still had jurisdiction in June 2014 when it signed the Order of Sanctions.

In *Crites* the defendant sought sanctions after the plaintiff filed their nonsuit, but before the trial court signed the order on the nonsuit. It was a medical malpractice case. *Crites*, 284 S.W.3d at 841. The plaintiff filed a motion for nonsuit, and the defendant filed a motion for sanctions before the trial court signed the order of nonsuit. *Id.* The trial court signed the order on January 19, 2006 but did not hold a hearing on the motion to sanctions until February 24, 2006 - more than thirty-days after the order of nonsuit. *Id.* Ultimately the Texas Supreme Court remanded the matter to the court of appeals to consider the sanctions motion. *Id.* at 843.

A recent mandamus action also illustrates the hole in the "lost jurisdiction three and a half years ago" logic. *See In re Barnett & Garcia, PLLC*, No. 09-15-00019-CV, 2015 Tex. App. LEXIS 542 (Tex. App.–Beaumont Jan. 22, 2015, orig. proceeding) (memorandum op.). In this case the relator argued that the trial court lost plenary jurisdiction over the real party in interest's motion for sanctions. As the Beaumont Court of Appeals stated:

19

> The real parties in interest . . . filed a motion for sanctions before the trial court signed an order of dismissal. . . . The order of dismissal, which stated that the cause was dismissed on the plaintiff's notice of non-suit without mentioning the opposing party's motion for sanctions, did not dispose of the motion for sanctions. . . . Relators have not shown that the trial court signed orders in the case after the expiration of its plenary power. Accordingly, we deny the petition for writ of mandamus.

*Id.* at 2015 Tex. App. LEXIS 542 at *1-2. To determine the actual dates involved you have to go behind the scenes and examine that court of appeals' website records. As the petition for mandamus in that case sets out: (1) the plaintiffs filed a notice of nonsuit on September 11, 2014; (2) the defendants file a motion for sanctions on September 12, 2014; (3) the trial court signs a dismissal order on September 15, 2014; and (4) the trial court signs an order withdrawing the dismissal order on December 17, 2014. Petition for Writ of Mandamus, Appdnx P, *Id.*, http://www.search.txcourts.gov/SearchMedia.aspx?MediaVersionID=07b6 4ec4-3c95-4061-bab3-f933ff52f4ee&coa=coa09&DT=Brief&MediaID=f29f dc1d-b4f3-4b5a-a65c-d35ade7a9b9d. The Bank would argue that the trial court's order signed approximately ninety days later was undoubtably void. Yet, the Beaumont Court of Appeals do not grant mandamus relief. *In re Barnett & Garcia, PLLC*, No. 09-15-00019-CV, 2015 Tex. App. LEXIS 542 at *2.[6]

---

[6] Mandamus would be appropriate where a trial court has issued an order after the expiration of its plenary power because such orders are void. *In re Brookshire Grocery*

4. The trial court still had jurisdiction in June 2014 as the trial court did not sign the last order of nonsuit until late 2013, and Hlavaty and Strnadel had asserted claims which prevented that nonsuit order from being a final, appealable judgment.

The Bank, like the trial court, misunderstands how a sanctions claim interacts with a trial court's jurisdiction. Both the Bank and the trial court's mindset is *pre-Unifund CCR* Partners, pre-*Crites*, pre-every other case that would say a nonsuit order is not the be-all and end-all of plenary jurisdiction. On June 3, 2014 the trial court's Final Order states, in referring to the December 2013 nonsuit, "This event finally triggered the expiration of this court's plenary jurisdiction in this case on December 15, 2013, thirty days later. No pleading has been filed which would operate to extend this court's plenary jurisdiction." CR 4:786. As has been detailed in this brief, the December 2013 order was not a final, appealable judgment as Hlavaty and Strnadel's pending sanction claims, if nothing else, prevented the nonsuit order from being final since "a judgment is not final and appealable until the sanctions request is specifically disposed of by the trial court, or until the trial court issues an order with sufficient finality language." *In re Reynolds*, No. 14-14-00329-CV, 2014 Tex. App. LEXIS 7105 *13; *see also American Heritage Cap., LP*, 436 S.W.2d at 871.

_____

Co., 250 S.W.3d 66, 68 (Tex. 2008) (orig. proceeding) (*citing In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding)).

The trial court's fixture, like the Bank's fixture, on refusing to accept that the December 2013 nonsuit order was not a final judgment "clearly fails to correctly analyze or apply the law." *In re Walker & Twenhafel, LLP*, No. 13-14-00065-CV, 2014 Tex. App. LEXIS 1729 *2 (Tex. App.– Corpus Christi-Edinburg, Feb., 14, 2014, orig. proceeding) (memorandum op.). *Unifund CCR Partners* would say the trial court's conclusion incorrectly analyzes or misapplies Texas law. *Crites* would say such a conclusion incorrectly analyzes or misapplies Texas law. This Court should say such a conclusion incorrectly analyzes or misapplies Texas law. Therefore, the Court should affirm the trial court's grant of sanctions against CR0ss-Appellant.

C.  None of the nonsuit orders in this case expressly addressed Hlavaty and Strnadel's claims in their First Amended Counterclaims against the Bank.

The nonsuit orders first signed as to Hlavaty and Strnadel were simply interlocutory, non-appealable orders that did not dispose of their pending claims against the Bank. Even the Bank conceded such in the trial court as can be shown when it filed its Motion for Summary Judgment regarding the Alleged Declaratory Judgment Counterclaims on March 15, 2011 - some eight plus months after the trial court signed the nonsuit order. CR 1:172. This motion was directed at Hlavaty and Strnadel's respective declaratory judgment action claims. CR 1:172-73. As the Bank states, "This

Motion is not directed at the Counterclaims which assert a violation of TRCP 13 (which are essentially Motions for Sanctions). This Motion seeks Summary Judgment on the Declaratory Judgment counterclaims only." CR 1:174-75.[7] The thrust was only directed to whether Hlavaty and Strnadel had a viable declaratory judgment action. CR 1:175-80.

In the face of this motion for summary judgment Hlavaty and Strnadel did more then simply stand on their current pleadings. In March 2015 Hlavaty and Strnadel amended their pleadings. CR: 249, 255. Those amended claims were viable, stand alone claims made in a pending case. In its June 3, 2014 Final Order the trial court held, "This court concludes that the amended counterclaims filed by Hlavaty and Strnadel on March 15 and 29, 2011, are a nullity, and to the extent this court has the authority to do so, they are hereby STRICKEN." CR 4:786 (emphasis in original). The trial court abused its discretion in making such a ruling.

Strnadel first filed his First Amended Counterclaim of Defendant/Counterplaintiff Jeff Strnadel on March 15, 2011. CR 2:249. The first claim in the amended pleading concerned a breach of an employment agreement. CR 2:249. He stated:

> Counterdefendant Commercial State Bank has breached its employment contract and agreement with Jeff Strnadel. It was promised to Jeff Strnadel that the Bank would carry error and

---

[7] The docket sheet shows a notation, "10/25/11 Bank's MSJ denied." CR 1:8.

omission type insurance to cover any attorneys' fees and expenses Jeff Strnadel may incur due to any allegations related to his employment with the Bank. In addition to providing a defense, the insurance was to provide coverage for any liability. Jeff Strnadel has incurred attorney's fees, court cost and expenses related to a lawsuit and allegations the promised "E & O" insurance policy was to being paying and providing coverage.

CR 2:249. He also asserted claims against the Bank, in addition to the earlier asserted declaratory judgment and sanctions claims, for quantum meruit, restitution, or unjust enrichment. CR 2:249-50.

On March 29, 2011, Hlavaty followed suit and filed his First Amended Counterclaim of Defendant/Counterplaintiff Patrick Hlavaty. CR 2:255. Like Strnadel, he also raised a similar breach of an employment agreement. CR 2:255. Like Strnadel, he also asserted claims against Plaintiff, in addition to the earlier asserted declaratory judgment and sanctions claims, a claim for quantum meruit, restitution, or unjust enrichment. CR 2:255-57. Hlavaty and Strnadel also filed their Counterplaintiffs' Summary Judgment Response on March 29, 2011. CR 2:261.

These are matters involving the same parties that were before the trial court. Assuming the Bank had not nonsuited its claims Hlavaty and Strnadel would have been required to bring these claims in the case lest they be barred by res judicata. *State & County Mutual Fire Ins. Co. v. Miller*, 52 S.W.3d 693, 696 (Tex.1992); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 630 (Tex.1992). If Hlavaty and Strnadel had filed these as a

separate lawsuit in March 2011 it would have been proper to consolidate their lawsuit with this lawsuit and their pending claims against the same party.

Hlavaty and Strnadel asserted these claims.[8] This Court should say that these independent claims translated to the trial court continuing to have subject matter jursdiction over this case in June 2014. Therefore, the argument that the trial court's belief it lacked jurisdiction could form the basis for reversing the June 11, 2014 Order of Sanctions should fall on deaf ears.

---

[8] It may be that the Bank would have had a right to seek severance of these additional claims. TEX. R. CIV. P. 41. But, the Bank never sought such relief.

II.     ASSUMING THE TRIAL COURT HAD JURISDICTION TO ISSUE ITS JUNE 11, 2014 ORDER OF SANCTIONS, THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN INVOKING ITS INHERENT POWER TO SANCTION THE BANK'S BAD FAITH CONDUCT.

Hlavaty and Strnadel concede the Court must reverse the trial court's decision to grant sanctions against the Bank if the trial court did not have jurisdiction at the time it issued the sanctions order. However, in the event the Court finds the trial court abused its discretion in dismissing Hlavaty and Strnadel's claims as they contend, the Court should affirm the trial court's sanctions order against the Bank. The record in this case supports the trial court's use of its inherent power to sanction bad faith conduct on the Bank's part.

A.      The Bank waived any complaints about the four prior orders against the Bank.

Regardless of whether the bank preserved its right to complain about the non-jurisdictional aspects of the June 11, 2014 Order of Sanctions, it waived any complaints about the four prior orders against it other than the argument the trial court lacked jurisdiction to issue any prior order. CR 4:792. The trial court had previously signed four orders against the Bank:

March 29, 2010 - CR 1:60;

April 11, 2011 - CR Supp ___, CR 1:14

September 8, 2011 - CR Supp ___, CR 1:8; and

August 21, 2013 - CR 3:541.[9]

The Bank filed a Motion to Vacate Order for Sanctions order on July 31, 2014. CR 4:791. This motion to vacate did not directly reference the four prior orders nor complain about any prior orders against the Bank beyond implicitly arguing the trial court lack jurisdiction over certain matters. CR 4:791-93. The Bank has not preserved for appellate review any complaints against these prior orders beyond its "lacks jurisdiction" argument. *John Kleas Co. Inc. v. Prokop*, No. 13-13-00401-CV, 2015 Tex. App. LEXIS 3162 *34 (Tex. App.– Corpus Christi-Edinburg, Apr. 2, 2015, n.p.h.); *Rudisell v. Paquette*, 89 S.W.3d 233, 236 (Tex. App.--Corpus Christi 2002, no pet.).

Further, the Bank does not specifically mention or reference the first three orders in its brief. Cross-Appellant's Brief at page 18-23. As to the last order it merely argues that the trial court vacated the order on the basis that the trial court contending it had lacked jurisdiction to sign it - maybe this is also an implicit jurisdictional argument against the non-referenced earlier orders. Cross-Appellant's Brief at page 22-23. The Bank makes no other appellate complaints about those orders. It does not argue that the trial court abused its discretion in granting the relief in those orders. Consequently, the Bank waives any arguments it might have that the trial

---

[9] The trial court actually signed an order on July 22, 2013. CR 3:504. However, as the August 2013 order was *nunc pro tunc*, the early July order is not necessary to resolve the question.

court committed reversible error in signing those earlier orders. TEX. R. APP. P. 38.1(i). Therefore, assuming the trial court did in fact have jurisdiction to issue those orders, the Court is faced with the reality that the Bank's conduct required the trial court to repetitively order it to comply with Hlavaty and Strnadel's valid discovery requests.

B. The trial court did not abuse it discretion in signing the June 11, 2014 Order of Sanctions as the trial court complied with necessary due process requirements.

Jurisdictional arguments aside, the Bank's arguments amount to (1) the trial court did not follow proper procedures, and (2) no evidence supported the monetary award. Cross-Appellant's Brief at page 18-22. These arguments are either simple boiler plate complaints or fail to consider this Court's dictates to look beyond the four corners of the order. There is also the question of whether the Bank waived any arguments beyond jurisdictional arguments as it never focuses on the basis of the trial court's action - the inherent power to punish a party's bad conduct. But, regardless of the Bank's arguments, the trail court did not abuse its discretion in awarding sanctions. Therefore, the Court should affirm the June 11, 2014 Order of Sanctions.

1. The basis of the trial court's Order of Sanctions is its inherent power to sanction bad faith conduct, but the Bank focuses on Texas Rule of Civil Procedure 13 instead of the stated trial court's inherent power.

To read the Bank's brief one is hard pressed to know what was the basis of the trial court's Order of Sanctions. The one reference is, "Furthermore, sanctions awarded under Texas Rule of Civil Procedure 13 must be based on good cause and must describe the conduct giving rise to good cause." Cross-Appellant's Brief at page 19, 20 (the Bank repeats the exact sentence agin on the following page). But, while the Bank cites to Rule 13, the trial court's Order of Sanctions unequivocally states:

> It has become clear to the Court that (the Bank) has repeatedly conducted itself in the course of this case without due regard for the authority of this Court as a court. Such persistent disrespect has been an affront to the dignity of this and all courts. This Court accordingly recognizes a need for it to exercise its inherent authority pursuant to *Willy v. Coastal Corp.,* 503 U.S. 131 (1992), to sanction this litigant for deliberate misbehavior in the course of these proceedings.

CR 4:788. The order never mentions Rule 13. Hlavaty and Strnadel's motion seeking sanctions was not limited to a specific Texas Rule of Civil Procedure. CR 3:634-37. It asked the trial court to enforce its earlier order, sanctions, "and for such other and further releif for which (Hlavaty and Strnadel) may be justly entitled." CR 3:636. Frankly, Hlavaty and Strnadel suggest the Bank the Bank waived any arguments it might have that the

29

trial court lacked the inherent power to sanction the Bank. TEX. R. APP. P. 38.1(i).

But, even if the Court does not agree the Bank waived any arguments against the basis for order by not briefing or addressing the question of inherent power to sanction, this Court adheres to the proposition the inherent power to sanction conduct is an available trial court power, "We hold Texas courts have inherent power to sanction for bad faith conduct during litigation." *Kutch v. Del Mar College*, 831 S.W.2d 506, 509 (Tex. App.--Corpus Christi 1992, no writ); *see In re A.M.B.V.*, No. 13-13-00081-CV, 2015 Tex. App. LEXIS 59 *33 (Tex. App.–Corpus Christi - Edninburg Jan. 8, 2015, orig. proceeding) (memorandum op.).

The Court held "that Texas Courts have the inherent power to sanction for abuse of the judicial process which may not be covered by rule or statute. This power includes the power to sanction appropriately for failure to comply with a valid court order incident to one of the core functions of the judiciary." *Kutch v. Del Mar College*, 831 S.W.2d at 510. The trial court's power is limited by due process. *Id*. at 511. A review of the proceedings in this case demonstrate the trial court's order satisfies due process.

2.	The final Order of Sanctions was the fifth order against the Bank following four prior, valid, enforceable despite the Bank arguing to the contrary.

In reviewing the Order of Sanctions the Court should remember that this was the fifth order against the Bank. The scope of the Court's review is not limited to the sanctions hearing - it includes the entire record that was before the trial court. *Cuellar v. Maldonado*, No. 13-14-00491-CV, 2015 Tex. App. LEXIS 2138 *33 (Tex. App.–Corpus Christi - Edninburg Mar. 5, 2015, n.w.h.) (memorandum op.); *Kutch*, 831 S.W.2d at 508. But, despite this Court's pronouncement that review goes beyond the Order of Sanctions, the Bank wants the Court to only focus on two of the trial court's prior orders, if that:

> Specifically, in the order of sanctions, the trial court states that "the [c]ourt has considered that ***prior orders*** designed to require (the Bank) to participate in the litigation process in good faith and in compliance with court orders were ineffective.. . . The prior orders in the record[10] — referenced in the order of sanctions—are an order on a motion to compel, entered on July 22, 2013, and an order *nunc pro tunc*, entered on August 21, 2013. These discovery orders were clearly entered after September 1, 2010. Meaning, per the trial court's final order, cited *supra*, the discovery orders were vacated."

---

[10] The Bank plays it a bit tricky with the "record" reference. The Bank never mentions in its brief the March 29, 2010 discovery order against it even though it is in the Clerk's Record. CR 1:60. Also, while at that time the April 11, 2011 and September 8, 2011 orders were not part of the appellate record, the bank has the burden of proof and chose not to bring these prior orders to the Court's attention despite Docket Sheet references. CR 1:8 (September 8, 2011 order); 14 (April 11, 2011 order).

Cross-Appellant's Brief at page 22 (emphasis in original). As discussed earlier, the trial court had previously signed four orders against the Bank:

March 29, 2010 - CR 1:60;

April 11, 2011 - CR Supp ___, CR 1:14;

September 8, 2011 - CR Supp ___, CR 1:8; and

August 21, 2013 - CR 3:541.

The question of sanctions had been considered earlier, even though the trial court had not granted monetary sanctions earlier. An example of where the trial court carried along a prayer for sanctions is shown in its Aprill 11, 2011 order where it struck out the sanctions language with the hand-written notation "under advisement." Supp. CR ___. The trial court also stated in the August 21, 2013 order, "The prayer of Counterplaintiffs for further Sanctions in the Motion and the Supplement is neither granted nor denied, but shall be carried with this case." CR 3:543.

The trial court signed years worth of orders against the Bank. The Court should consider the whole record, not simply what the Bank says is the record. *Cuellar*, No. 13-14-00491-CV, 2015 Tex. App. LEXIS 2138 *33; *Kutch*, 831 S.W.2d at 508. A review of the entire record demonstrates the trial court followed due process in imposing sanctions through its inherent power to sanction bad faith conduct.

3. The trial court's June 11, 2014 Order of Sanctions complied with necessary due process requirements.

While the Bank may argue that the trial court somehow did not provide a basis for its decision, everything that should be there is there for the Court to review the sanctions order. Hlavaty and Strnadel take little issue with the cases the bank cites supporting its general statements concerning applicable standards but, as is often the case with "abuse of discretion" determinations, the devil lies in the details of those cases as well as this case. Take for instance one of the cited cases, *Spohn Hosp. v. Mayer*, 104 S.W.3d 878 (Tex. 2003) - a case appealed from this Court. The Texas Supreme Court held that the trial court's sanctions were excessive.

In *Spohn Hosp.*, the Texas Supreme Court correctly outlined the need that "[a] just sanction must be directed against the abuse and toward remedying the prejudice caused to the innocent party, and the sanction should be visited upon the offender." *Id*. at 882. But, as the Court noted, one could not tell in *Spohn Hosp*. who the sanctions were against. "Although the sanctions were generally 'directed against' the alleged abuse, the record contains no evidence that the sanctions were 'visited on the offender.' In fact, neither the trial court nor the court of appeals discusses whether counsel or their clients were responsible for the discovery abuse." *Id*. at 883-84.

Contrast that to the sanctions order in this case. Here, the trial court states, "The Court has also considered that the recalcitrant behavior has occurred while (the Bank) has been represented by a succession of different attorneys of record, indicating that the disrespect for the judicial process is not a product of poor representation by counsel but of an underlying attitude on the part of the (the Bank) itself." CR 4:789. It is the bank who is expressly ordered to pay the monetary sanctions. CR 4: 789. Consequently, unlike in *Spohn Hosp.*, we know who the sanctions are directed against - the Bank (i.e., the party).

Also, the sanctions in *Spohn Hosp.* were severe - a jury instruction that certain facts were established. *Spohn Hosp.*, 104 S.W.3d at 881. Unlike this case, where Hlavarty and Strnadel had pursued numerous motions to compel, the plaintiffs in *Spohn Hosp.* went straight for the sanctions without ever having tried less stringent or severe options. *Id.* at 880. The Court detailed alternative sanctions that implictly delineate, if not expressly state, lesser sanctions that would have been proper. *Id.* at 883.

Here, unlike in *Spohn Hosp.*, Hlavaty and Strnadel pursued lesser sanctions first - four prior court orders. Yet, those less sever efforts did not dissuade the bank's conduct and achieve the results the trial court intended. Faced with a recalcitrant litigant, the trial court ordered monetary sanctions. CR 789. The *Spohn Hosp.* Court would have seen this as a logical

progression as the earlier orders were ineffective against the Bank.

Therefore, the trial court's June 11, 2013 Order of Sanctions did not violate

due process requirements.

> C.  Any error regarding the evidence supporting the monetary award or lack of particularity in the sanctions order is harmless because the trial court did not obscure its reasoning at the hearing, and the situation is adequately presented to this Court.

The Bank attacks the sanctions order, arguing, "In this case, the

sanctions order the court entered was void of facts justifying the sanction. .

. . Because sufficient facts showing good cause were not stated in the order,

there is no way to determine whether a direct relationship exists between

the conduct and the sanctions." Cross-Appellant's Brief at 19. However, it

would not matter in this case if the order lacked the necessary particularity

as the transcripts of the hearings in this case adequately present the case to

this Court. *John Kleas Co. Inc.*, No. 13-13-00401-CV, 2015 Tex. App. LEXIS

3162 at *36; *see* TEX. R. APP. P. 44.1(a).

As this Court stated, "In 1989, this Court held that the failure of a

sanctions order to comply with the particularity requirements was harmless

because '[t]he trial court did not obscure its reasoning at the hearing, and

the situation has been adequately presented to us.'" *Id.* (citing to *Powers v.

Palacios*, 771 S.W.2d 716, 719 (Tex. App.--Corpus Christi 1989, writ

denied)). This Court has before it the transcripts of two hearings: (1) March

22, 2013 - RR 2; and (2) May 21, 2014 - RR 3 and 4. The Bank complains that no evidence of fees was introduced at the May 21, 2014 hearing, but does not make any reference to the earlier hearing. Cross-Appellant's Brief at pages 20-21. The fees were part of the March 22, 2013 hearing:

It should be remembered that the June 11, 2014 Order of Sanctions awarded Hlavaty $12,113.50, and Strnadel $6,151.00 CR 4:789. Hlavaty and strnadel's counsel sent a letter to the trial court on June 6, 2014 about eh amount of fees in this matter. CR 4:787. In it, their counsel states:

> At our last hearing on May 21, 2014, you asked what was the original attorney's fees demand by Counterplaintiffs made prior to the non-suit of the Bank's claims against Counterplaintiffs. I could not remember the exact figure at the time but I have now looked it up and the amount is as follows: $6,151.00 for Jeff Strnadel and $12,113.50 for Patrick Hlavaty. These figures were conveyed in a letter to Donald Zwernemann dated April 14, 2010.

CR 4:787. The letter shows it being faxed to the Bank's counsel. CR 4:787. The appellate record does not reflect any response from the bank's counsel, and the Bank does not reference any response in its brief. The trial court signed the Order of Sanctions five days later. CR 4:790. However, this was not the only word on fees in this matter.

At the March 22, 2013 hearing Howard Singleton, Hlavaty and Strnadel's counsel, argued to recover specific costs that had been expended in this matter relating to representing his clients, including pursuing

36

repeated discovery. RR 2:26-28. He delineated fees and costs expended in this matter that far exceeded the awarded amounts. For instance he states, "And releated to my efforts to get the Melanson deposition scheduled on my - - some of which is documented on my Exodus scroll here. I had - - I had in excess of 80 hours which would equal $225 an hour at $18,000." RR 2:27. He delineates Hlavaty's prior counsel's work in this case and states, "(Hlavaty's previous counsel) has spent in excess of 48 hours at $300 an hour which equals $14,400, which also includes at least four different trips to the 23rd District Court seeking Motions to Compel and/or overcoming the bank's objections to producing the items, which still today haven't been produced." RR 2:27-28. Frankly, when adding up the dollar amounts Mr. Singleton lays out for fees and expenses, the math comes to a total in excess of $39,000. RR 2:26-28. Yet, the trial court only awarded a total of $18,264.50. CR 4:789.

The amounts were out there for the trial court. No, Mr. Singleton was not sworn in as a witness. RR 2:28. But, he threw himself out there as an officer of the Court. RR 2:28. The Bank's counsel did not address the amount of the fees or make any type of objection before or after Mr. Singleton delineated the amounts. RR 2:1-54.

What happened here is similar to what happened in *Powers v. Palacios*, 771 S.W.2d 716 (Tex. App.--Corpus Christi 1989, writ denied). The

appellee's attorney had been awarded $2,500, but had asked for $4,500. *Id.* at 719. The Court will recall that the attorney seeking sanctions in that case was not sworn in. *Id.* Interestingly, when faced with the question of the basis of the fee amount, the attorney instead "explained the legal authority for the sanction" - he did not answer the question asked. *Id.* Opposing counsel did not ask any questions or make any objections. *Id.* This Court stated, "The trial court was aware of the numerous hearings and pleadings and the discovery in the case. We find the evidence sufficient to sustain the $ 2,500 figure." *Id.*

The Court looked beyond the sanctions order in determining that the trial court in *Powers* had not abused its discretion. Like the trial court in *Powers*, when the Court looks beyond the Order of Sanctions it can also see a trial court was aware of the numerous hearings and pleadings and the discovery in this case. The trial did not abuse its discretion in only awarding a total of $18,264.50 as a monetary sanction against a bad faith litigant. Any error here is harmless. TEX. R. APP. P. 44.1(a). Therefore, the Court should affirm the trial court's Order of Sanctions.

PRAYER

The trial court improperly dismissed Cross-Appellees' claims against Cross-Appellant. However, the trial court properly awarded Cross-Appellees monetary sanctions against Cross-Appellant. While the Court should reverse the trial court's June 3, 2014 Final Order and remand the matter to the trial court for further proceedings, the Court should affirm the June 11, 2014 Order of Sanctions against Cross-Appellant. Cross-Appellees also pray for any further relief to which they may be entitled.

Respectfully submitted,

WALTER JAMES KRONZER, III, P.C.
  /s/ Walter James Kronzer, III
Walter James Kronzer, III
State Bar No. 11735001
wkronzer@kronzer.com
3000 Weslayan, Suite 247
Houston, Texas 77027-5753
713-622-5766
713-622-5445 (fax)
wkronzer@kronzer.com (e-mail)

THE SINGLETON LAW FIRM
Howard H. Singleton
State Bar No. 1843620
109 East Milam
Wharton, TX 77488
979-532-9800
979-532-9085 (fax)
singletonlaw@sbcglobal.net (e-mail)

ATTORNEYS FOR CROSS-APPELLEES PATRICK HLAVATY AND JEFF STRNADEL

39

CERTIFICATE OF COMPLIANCE

Pursuant to TEX. R. APP. P. 9.4, I hereby certify that this Cross-Appellees Patrick Hlavaty and Jeff Strnadel' Brief contains 9,042 words. This is a computer-generated document created in Corel WordPerfect X7, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.


<u>   /s/ Walter James Kronzer, III   </u>
           Walter James Kronzer, III




CERTIFICATE OF SERVICE

I certify that on April 30, 2015 a copy of **Cross-Appellee Patrick Hlavaty and Jeff Strnadel's Brief** has been served via electronic service or fax to:

Dawn S. Holiday
Gregg S. Weinberg
Mia B. Lorick
Roberts Markel Weinberg Butler Hailey PC
2800 Post Oak Blvd. 57th Floor
Houston, TX 77056
713-840-9404 (fax)
dholiday@rmwbhlaw.com
gweinberg@rmwbhlaw.com


<u>   /s/ Walter James Kronzer, III   </u>
           Walter James Kronzer, III

# Exhibit A

April 11, 2011 Order as to Jeff Stranadel's [sic] Motion
to Compel Error & Omissions Policy (CR Supp ___)

| | | |
|---|---|---|
| COMMERCIAL STATE BANK OF EL CAMPO, TEXAS, INC., Plaintiff/Counter-Defendant, | § § § § | IN THE DISTRICT COURT |
| v. | § § | WHARTON COUNTY, TEXAS |
| PATRICK HLAVATY, *et al.*, Defendants/Counter-Plaintiffs . | § § § | 23rd JUDICIAL DISTRICT |

## ORDER

ON THIS DAY, came on for consideration the Defendant/Counter-Plaintiff's Motion to Compel Error & Omission Insurance Policy ~~and for other relief and the Court, after having reviewed the appropriate pleadings on file, evidence contained therein, and having considered the arguments of counsel, if any, believes that said motion is meritorious and should in all things be granted. It is, therefore,~~

~~ORDERED, ADJUDGED and DECREED that the motion is granted;~~

ORDERED, ~~ADJUDGED and DECREED~~ that Counter-Defendant Commercial State Bank produce all the Error & Omission insurance policy(s) *in effect at the time this lawsuit* within the next 2 weeks. *was filed*

ORDERED, ~~ADJUDGED and DECREED~~ that Counter-Defendant Commercial State Bank produce any reports on Jeff Strnadel that were relied upon by Don Zwernemann in filing suit against Strnadel or referred to by Don Zwernemann in his deposition dated February 17, 2011 within the next 2 weeks..

ORDERED, ~~ADJUDGED and DECREED that as sanctions Counter-Defendant Commercial State Bank shall pay all costs and reimburse Mr. Strnadel's attorneys fees in the amount of _____ related to the time needless spent repeatedly requested and noticing the Melanson deposition and filing and advocating this Motion.~~

*under advisement*

Attorney's fees are to be paid to the Singleton Law Firm at 109 E. Milam Wharton, Texas within 14 days of this Order.

SIGNED this the 11 day of April , 2011.

_____
PRESIDING JUDGE

APPROVED & ENTRY REQUESTED:

SINGLETON LAW FIRM

By: _____
HOWARD H. SINGLETON
SBN 18436200
109 East Milam Street
Wharton, Texas 77488
(979) 532-9800
(979) 532-9805 FAX
ATTORNEY FOR DEFENDANT /COUNTER–PLAINTIFF
JEFF STRNADEL

# Exhibit B

September 8, 2011 Order granting Counter-Plaintiff Jeff Strnadel
and Patrick Hlavaty's Motion to Compel (CR Supp ___)

Cause No. 44,081

| | | |
|---|---|---|
| COMMERCIAL STATE BANK | § | IN THE DISTRICT COURT |
| OF EL CAMPO, TEXAS, INC., | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | WHARTON COUNTY, TEXAS |
| | § | |
| PATRICK HLAVATY, *et al. and* | § | |
| JEFF STRNADEL, | § | |
| Defendants/Counter-Plaintiffs. | § | 329TH JUDICIAL DISTRICT |

*Revised*

## ORDER GRANTING COUNTER-PLAINTIFF JEFF STRNADEL AND PATRICK HLAVATY'S MOTION TO COMPEL

ON August 26, 2011, came on for consideration the Counter-Plaintiffs' [Jeff Strnadel and Patrick Hlavaty] Motion for Continuance and to Compel Completion of Discovery and the Court, after having reviewed the appropriate pleadings on file, evidence contained therein, and having considered the arguments of counsel, if any, believes that said motion is meritorious and should be granted. It is, therefore,

ORDERED that the Bank, Counter-Defendant, is to produce David Melanson for Deposition.

ORDERED that the Bank, Counter-Defendant, is to produce any investigations or reports by anyone hired by the Bank, Counter-Defendant, to investigate possible wrong doings at the Bank, which mentions Jeff Strnadel within 45 days from this date ~~of this hearing.~~

SIGNED this the __8__ day of __Sept__, 2011.

_____
PRESIDING JUDGE

APPROVED & ENTRY REQUESTED:

SINGLETON LAW FIRM

**FILED**
at __5:00__ o'clock __P__ M.

SEP 0 8 2011

NERISSA HOUSE
DISTRICT CLERK, WHARTON CO., TEXAS
By_____ Deputy

By: _____

HOWARD H. SINGLETON
SBN 18436200
109 East Milam Street
Wharton, Texas 77488
(979) 532-9800
(979) 532-9805 FAX
ATTORNEY FOR
COUNTER-PLAINTIFFS JEFF STRNADEL
AND PATRICK HLAVATY

# Exhibit C

Order Nunc Pro Tunc on Counterplaintiffs Motion to Compel
& For Sanctions & Supplement to Counterplaintiffs Motion
to Compel & for Sanctions (CR 3:541)

**Cause No. 44,081**

| | | |
|---|---|---|
| COMMERCIAL STATE BANK | § | IN THE DISTRICT COURT |
| OF EL CAMPO, TEXAS, INC., | § | |
|     Counterdefendant, | § | |
| | § | |
| v. | § | OF WHARTON COUNTY, TEXAS |
| | § | |
| PATRICK HLAVATY, *et al.*, | § | |
|     Counterplaintiffs. | § | 329th JUDICIAL DISTRICT |

==**ORDER *NUNC PRO TUNC* ON COUNTERPLAINTIFFS'**==
==**MOTION TO COMPEL AND FOR SANCTIONS AND**==
==**SUPPLEMENT TO COUNTERPLAINTIFFS'**==
==**MOTION TO COMPEL AND FOR SANCTIONS**==

The Court, on March 22, 2013, having considered Counterplaintiffs' Motion to

Compel and for Sanctions (the "Motion") and Supplement to Counterplaintiffs' Motion

to Compel and for Sanctions (the "Supplement"), the Response, the Reply and the

arguments of counsel, if any, hereby orders as follows:

~~**FILED**~~
at 5:00 o'clock P M.

IT IS ORDERED that Counterdefendant Commercial State Bank of El Campo,

AUG 2 2013
NERISSA HOUSE
Texas, Inc. ("CSB") shall produce within thirty (30) days after the DISTRICT CLERK, WHARTON CO, TEXAS
by _____ Deputy

following documents:

1.  *Strnadel "Fraudulent" Inspections.* All inspection reports or similar documents
    **unredacted** which CSB has ever claimed were in any way fraudulent or otherwise
    formed the basis of any claim it ever made concerning Jeff Strnadel; ~~together with~~
    ~~any documents which tend in any way to support or contradict any such claim.~~

2.  *Investigative Reports.* All reports from the Moritz agency (or any other entity
    engaged to investigate any claims ever made by CSB herein) **unredacted** which
    relate or pertain, in whole or in part, to Jeff Strnadel, Patrick Hlavaty, ~~or any other~~
    ~~person or entity originally named by CSB as a party herein [together with any and~~
    *with* all attachments thereto ~~*plus* any and all documents referenced and relied upon~~
    ~~therein (whether attached or not)]~~ **unredacted**; ~~together with any other~~

**541**

investigative reports covering any person not sued herein for activities occurring during the time period covered by the Counterdefendant's original allegations herein, to-wit, from November 1, 2005 through November 1, 2007.

3.  *Bond Claims.* Any and all documents and things **unredacted** submitted by CSB (or anyone, including any attorney, acting on behalf of CSB) as part of any bond or insurance notice, proof of loss, or claim pertaining in any way to Jeff Strnadel, Patrick Hlavaty ~~or any other person or entity originally sued by CSB herein~~, together with any and all documents **unredacted** sent or received by CSB or any such bond or insurance company in connection with any such notice, proof of loss, or claim.

4.  *E&O Policies.* **Unredacted** copies of any Errors & Omissions or similar policy of insurance providing coverage for any period of time covered by any of the claims originally made by CSB herein, including but not limited to the policy(ies) referenced in the CSB Board minutes for June 20, 2007.

5.  *Loan Files.* **Unredacted** copies of each and every complete loan file as to which CSB has ever made any claim (in this lawsuit, to any bond or insurance company, or otherwise) that CSB suffered any loss due to any action or inaction of Jeff Strnadel, Patrick Hlavaty, or any original Defendant herein.

6.  *Altered Loan Packages.* **Unredacted** copies of both the complete loan package or file and also the shortened, adumbrated, edited or otherwise changed version of the same claimed by CSB to have been created or submitted by Patrick Hlavaty ever.

If this Court has entered any sort of confidentiality order which would apply to any of the production called for hereby, such production shall be made consistent with such order. In any event, the production called for hereby shall be made at the offices of Howard Singleton in Wharton, Texas during regular business hours (9:00 a.m. – 12:00 p.m. and 1:00 p.m. – 5:00 p.m.) no later than the thirtieth (30th) day following this Order.

Thereafter, Counterplaintiffs shall be entitled to reconvene the deposition of David Melanson.

2

542

The prayer of Counterplaintiffs for further Sanctions in the Motion and the Supplement is neither granted nor denied, but shall be carried with this case.

This is an Order *Nunc Pro Tunc* and supersedes any prior order this Court has made regarding the same subject matter, *to wit,* Counterplaintiffs' Motion to Compel and for Sanctions and Supplement to Counterplaintiffs' Motion to Compel and For Sanctions.

Signed this ___21___ day of _____Aug_____, 2013.

_____
JUDGE RANDY CLAPP

APPROVED AND ENTRY REQUESTED:

*Howard Singleton*
_____
HOWARD SINGLETON
TBA No. 18436200
Singleton Law Firm
109 East Milam Street
Wharton, Texas 77488
Tel: (979) 532-9800
Fax: (979) 532-9805

Attorney for Counterplaintiffs
Jeff Strnadel and Patrick Hlavaty

3

543